PURSLEY *v.* PURSLEY.

4-7425                                                        182 S. W. 2d 880

Opinion delivered October 23, 1944.

*L. Loyd Shouse, Merle Shouse* and *John H. Shouse,* for appellant.

*Henley & Henley,* for appellee.

SMITH, J. Martha Pursley, the widow, and Reba Pursley Howe and Mae Pursley Parker, the children of Oscar J. Pursley who departed this life intestate on or about December 17, 1935, filed this suit for the purpose of cancelling a certain deed, dated September 20, 1927, purporting to have been executed by Martha and O. J., her husband, to H. E. Pursley, a brother of Oscar. This relief was prayed upon the allegation that the deed was a forgery. R. W. Milum and wife, and Ernest Huff and wife, who claim title under a deed from H. E. Pursley and wife to Milum and deed from Milum to Huff, were made parties defendant. Depositions were taken, but, for some reason not explained, there was no appearance at the taking of the depositions by any of the defendants, who had filed answer denying the allegations of the complaint.

After much testimony had been taken, an amendment to the complaint was filed; in which Martha alleged that she had furnished the purchase money,

amounting to $1,200, to her husband and his brother, with which the land had been bought on November 6, 1920, and she prayed judgment against her husband's brother for one-half thereof, or $600, with interest. An answer was filed denying this allegation, and thereafter, without further pleadings having been filed, additional testimony was taken which enlarged the issues and, in effect, sought an accounting of the relations of these brothers as partners.

The principal question in the case, and the only question raised in the original pleadings, is whether the deed above referred to is a forgery, and if it be found, as was found by the court below, that it was not a forgery, but was a genuine deed, the decision of other questions raised by the conflicting testimony will be simplified. The court below dismissed the entire case as being without equity, and this action was warranted and required if the testimony of the plaintiffs and that offered in their behalf was found not to be true.

The deed in question was a warranty deed, with relinquishment of dower, and recites that O. J. Pursley had, for the consideration of $1,200 cash in hand paid, conveyed his undivided one-half interest in the 80-acre tract of land in Marion county to H. E. Pursley. The deed bears date of September 20, 1927, and contains a proper form of acknowledgment by O. J. Pursley and Martha Pursley, his wife, taken by E. G. Whitaker, a notary public, on the same date. The deed was not filed for record until the 15th day of May, 1937, which was subsequent to the death of O. J., and this fact is strongly urged as a circumstance supporting the contention that the deed was not a genuine instrument.

Martha denied categorically that she or her husband had signed or acknowledged the deed, and she offered testimony to the apparent effect that subsequent to the date of the deed H. E. Pursley had recognized his brother as a half owner of the land.

The notary testified he was about 74 years of age, and had been a notary public for 40 years, and that,

"except for rheumatism, my health is very good. I can't get around much." He knew O. J. Pursley and Martha, his wife, but did not know H. E., and he had no recollection whatever of having ever taken the acknowledgment of O. J. and Martha to the deed which was exhibited. He testified that he looked over some of his old signatures, and none are just alike. "I couldn't say. There is a similarity. Some of the individual letters seem like mine, and some don't. The signature is similar, but I can't say whether it is mine or not." He produced the seal which he had in use in 1927, and made the impression of the seal on a blank sheet of paper, which was offered in evidence, but does not appear in the transcript. He testified: "The impression I now make with the seal and the impression of the seal on the deed which I examine being compared, I believe the impression just made on the paper is a little bit plainer than the one on the deed. The seal now seems to make a dim impression. I do not know whether it made a clearer impression in 1927 than now or not." He admitted that the signature on the deed resembled his signature, and would not say that it was not his signature, but testified: "Comparing signatures and individual letters in the signature on the deed, I don't generally make waves like that. That looks more like a flowing hand. I never made a wave much like that." There was offered in evidence an affidavit for a warrant of arrest issued by Whitaker, as a justice of the peace, and his signature on the affidavit for the warrant appears to be identical with his signature on the deed.

There was offered in evidence a note dated December 3, 1925, payable to the Bank of Alpena, which has the admitted genuine signature of O. J. Pursley. Sterlin Hurley testified that he was the cashier of that bank from 1923 to 1930; that later he had been with the National Banking Department for four and one-half years, and had since been with the Federal Land Bank. He did not undertake to qualify as a handwriting expert, but did testify that he was familiar with different handwritings, and expressed the opinion that the deed con-

tained the genuine signature of O. J. Pursley. This note, containing the admitted signature of O. J. Pursley, and the original of the deed in question, have been submitted for our examination and comparison, and they appear to us to be the handwriting of the same person. Martha did not submit her signature for comparison.

Upon the question of H. E. Pursley's liability for the $600 sued for in the amended complaint, it may be said that much testimony was introduced relating to matters more or less collateral, principally in regard to the manner in which it was paid, if paid at all.

The land here in question was purchased in 1920, and Martha testified that money inherited by her from her father was used in its payment. At that time, and for some years subsequent thereto, the brothers owned jointly a farm in Boone county, and many head of cattle and a number of mules, and some other personal property, and much of the testimony relates to the disposal of this property; but we think no useful purpose would be served in reviewing and reciting the conflicting testimony on this subject. H. E. Pursley testified that he paid this debt, and he insists also that if not paid, the debt has long since been barred by the statute of limitations. We do not know from the record before us which of these defenses the chancellor sustained; but we think a finding in appellees' favor, on either ground, could not be said to be against the preponderance of the testimony.

Appellants insist that the debt is not barred by the statute of limitations, for the reason that it was payable when the partnership existing between the brothers had been settled, and that there has been, even yet, no settlement. We do not think, however, that the testimony established the existence of a partnership relation between the brothers. No transaction was shown in which they had shared either the profit or the loss. It does appear that at one time they owned jointly considerable livestock, and it also appears that this joint ownership had diminished as the stock was sold or traded. Appel-

lants do not ask for an accounting of the assets of the partnership, and they rely on its existence only to defeat the plea of the statute of limitations.

After the purchase of the land here in question, in 1920, both brothers for a time resided on it, but O. J. returned to Boone county and resided on another tract of land which the brothers owned as tenants in common. Thereafter H. E. Pursley accumulated livestock, concerning which no contention is made that O. J. had any interest. Prior to 1927, the date of the deed alleged to have been forged, the land there described was assessed for taxation in the names of both brothers, and they jointly paid the taxes. After 1927, H. E. caused the land to be assessed in his individual name, and all tax receipts thereafter were issued to H. E. individually. It is conceded that H. E. proceeded to make various improvements on the land, of which fact his brother was advised, and it is not contended that his brother ever made, or was asked to make, any contribution to the payment of these expenses.

It must be remembered that the land in question was purchased by the brothers in 1920, and the amended complaint alleging the loan of $600, used in its purchase, was not filed until December, 1943, and the testimony of H. E. Pursley is to the effect that the last of the personalty, consisting of some cattle and mules, owned by the brothers jointly, was sold in 1928, and that the proceeds of this sale were applied to the payment of a joint note of the brothers to one T. L. Richesin. However, that may be, we think the statute of limitations certainly began to run May 15, 1938, the date of a letter admittedly received by Martha, written by Virgie for her husband, H. E. Pursley, which expressed surprise that demand for payment had been made, and asserted that the debt had been paid. We think the statute ran from that date, if the demand was not previously barred.

On the whole case, we think the action of the court in dismissing the case is not contrary to the preponderance of the evidence, and the decree will be affirmed.